UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CLARENCE LOZOYA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CLOQUET ET AL.,<br><br>Defendants. | Case No. 0:21-cv-00990-ECT-LIB<br><br>**PLAINTIFF CLARENCE LOZOYA'S MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF CLOQUET'S MOTION TO DISMISS** |

Defendants City of Cloquet and Carey Ferrell ("City Defendants") ask the Court to dismiss Plaintiff's Complaint[1] without discovery by relying upon factual assertions contrary to the facts alleged in the Complaint and by ignoring the theories of liability pleaded in the Complaint. Fed. R. Civ. P. 12(b)(6) does not permit either approach. Defendants' opportunity to present factual assertions contrary to the allegations in the Complaint comes after discovery, not now, and Defendants must face the claims actually brought by Plaintiff. Defendants' motion should be denied.

## ALLEGATIONS OF THE COMPLAINT

On or about December 5, 2016, Plaintiff Clarence Lozoya was arrested by City of Cloquet police officer Scott Beckman, and was later charged with two felonies. Compl.

---

[1] Unless otherwise required by context, "Complaint" in this Memorandum refers to both Plaintiff's filed Complaint, ECF #1, and the Proposed Amended Complaint, ECF #56-1.

¶ 11 (ECF #1); Proposed Am. Compl. ¶ 10 (ECF #56-1). Beckman had a prior history and pattern of serious misconduct, including a) violations of the Cloquet Police Department's rules, b) conduct unbecoming an officer, c) immoral conduct, and d) false reporting of information in effectuating an arrest and obtaining a search warrant. Compl. ¶ 12; Proposed Am. Compl. ¶ 11.

On December 8, 2016, the public defender representing Lozoya demanded that the County disclose any *Brady* material or information. Proposed Am. Compl. ¶ 13.

Beckman's misconduct was not disclosed to Lozoya or his public defender, but rather was suppressed by the County. Compl. ¶ 13; Proposed Am. Compl. ¶ 14. "[K]nowing it had Brady/Giglio evidence in its possession which it suppressed," the County offered Lozoya a plea deal to settle the criminal charges, which Lozoya accepted rather than face the risk of a longer sentence if convicted at trial. Compl. ¶ 15; *see* Proposed Am. Compl. ¶ 21. Lozoya was sentenced to prison. Compl. ¶ 15; Proposed Am. Compl. ¶ 21.

On June 28, 2016, Carlton County Attorney Thomas Pertler had sent a letter acknowledging his purpose and intent to prevent criminal defendants from learning of Beckman's misconduct, the obligation to disclose *Brady* information, and his decision to implement a policy of suppressing the information about Beckman's misconduct. Proposed Am. Compl. ¶¶ 16, 18-19. The letter recognized that once one defense attorney learned of Beckman's misconduct, the news would quickly spread to all of them and present problems for criminal prosecutions. *Id*. ¶ 16. The City Defendants knew or should

have known of the contents of Pertler's letter, they knew that the information about Beckman's misconduct had not been disclosed, and they intentionally assisted Pertler in suppressing the information. Proposed Am. Compl. ¶ 20.

Lozoya's arrest occurred in December 2016, six months after the Beckman misconduct should have been disclosed to the criminal defense bar in Carlton County. *See* Compl. ¶ 11; Proposed Am. Compl. ¶ 10. Lozoya was sentenced to prison in March 2017. Compl. ¶ 15; Proposed Am. Compl. ¶ 21.

Eventually, an assistant Carlton County attorney learned of Beckman's misconduct, causing the County to dismiss nineteen pending criminal prosecutions. Proposed Am. Compl. ¶ 25. Pertler lost re-election in November 2018. *Id*. ¶ 26. In December 2018 the Carlton County Attorney's Office determined the information about Beckman's misconduct was *Brady* information that must be disclosed in every case in which Officer Beckman was involved, and adopted a policy calling for consideration of police officer misconduct to occur at the charging stage in a criminal prosecution. *Id*. ¶ 27. By these acts, the County implicitly acknowledged that Plaintiff would never have been charged had Beckman's misconduct been previously disclosed. *Id*.

In 2019 the newly elected County Attorney audited all criminal cases involving Beckman that resulted in a conviction and dismissed eight of them. *Id*. ¶ 28.

After learning of Beckman's misconduct, Plaintiff's public defender filed a motion seeking to withdraw Plaintiff's guilty plea. Compl. ¶ 16; Proposed Am. Compl. ¶ 30. The motion, filed February 6, 2019, stated that the basis for relief was "Defendant's counsel

became aware the State intended to dismiss charges after discovery of a due process violation in the form of failing to provide notice of Brady/Giglio material to Defendant." Proposed Am. Compl. ¶ 30. The County then filed a dismissal of the case against Plaintiff "for the following reasons: To correct a manifest injustice." Proposed Am. Compl. ¶ 31. Plaintiff was released after nearly two years of incarceration. Compl. ¶ 16; Proposed Am. Compl. ¶ 32. The County stipulated to sealing and expunging the record of Plaintiff's prosecution, which was granted by the court. Proposed Am. Compl. ¶ 32.

The City Defendants knowingly and intentionally engaged in a pattern and practice of concealing exculpatory and impeaching evidence of Beckman's misconduct from individuals arrested by Beckman, and engaged in these acts maliciously and with deliberate indifference to Plaintiff's rights. *Id*. ¶ 35.

## STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015). The motion will be denied if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

### I. The City Defendants Impermissibly Rely upon Facts Contrary to the Allegations in the Complaint.

The City Defendants rely on factual assertions contrary to or additional to the allegations pleaded in the Complaint. This is not permissible for purposes of a motion to dismiss. "To assess the adequacy of a complaint under Rule 12(b)(6), the Court must consider only the well-pleaded allegations in the complaint, which it must construe in favor of the plaintiff, and may not look to facts outside the complaint." *Haynes v. Iten*, No. 17-CV-5217, 2018 WL 3850735, at *6 (D. Minn. July 20, 2018), *report and recommendation adopted*, No. CV 17-5217, 2018 WL 3848442 (D. Minn. Aug. 13, 2018).

First, the City Defendants argue that the Complaint alleges Officer Beckman was "declared a *Brady* officer" at a time "somewhere between [Plaintiff's] own conduct on or about December 5, 2016 and his guilty plea." City Memo. at 2 (ECF #48); *id*. at 3 ("In the interim, former Officer Beckman was investigated and disciplined"). Not so. The Complaint alleges Beckman's misconduct was known to the City Defendants "at the latest by August 10, 2016" but they "continued to suppress" this information. Compl. ¶¶ 14, 16 (ECF #1).[2] It is not true, contrary to the City's suggestion, that the Complaint alleges Beckman's misconduct became known after Plaintiff was arrested. Rather, the Complaint

---

[2] The Proposed Amended Complaint alleges the City Defendants knew of Beckman's misconduct by June 2016 and knew or should have known of the County's policy of illegally suppressing that information, and intentionally assisted the County in suppressing the information. Proposed Am. Compl. ¶¶ 16, 20 (ECF #56-1).

5

alleges that the City knew about Beckman's misconduct for months *prior* to the arrest, but suppressed this information.

Second, the City Defendants assert that the "City Defendants fulfilled their *Brady* obligations by advising the prosecutor of an investigation and possible discipline relating to Officer Beckman's propensity for truthfulness." City Memo. at 8 (ECF #48). The Complaint does not allege the City Defendants fulfilled their *Brady* obligations or that they advised the prosecutor. On the contrary, the Complaint alleges they "suppress[ed]" this information. Compl. ¶ 16 (ECF #1).[3]

Third, the City Defendants assert Beckman "collected statements of two independent witnesses." City Memo. at 3 (ECF #48); *id*. at 7 ("two independent witnesses"). The Complaint does not so allege. The source relied on by the City for this assertion is not the Complaint, and in fact it does not even say that Beckman collected statements of two independent witnesses. If the City wishes to rely on this alleged evidence, it must conduct discovery and bring a motion for summary judgment. It cannot simply move to dismiss.

The City Defendants' motion to dismiss should be denied because it depends upon factual assertions contrary to the facts pleaded in the Complaint.

---

[3] The Proposed Amended Complaint alleges the City Defendants "knew that [the County] had not disclosed this information, and they intentionally assisted [the County] in suppressing the information." Proposed Am. Compl. ¶ 20 (ECF # ).

## II. The City Defendants' Arguments for Dismissal Lack Merit.

Acknowledging that the City Defendants' motion seeks to incorporate the arguments for dismissal asserted by the County, *see* City Memo. at 5 (ECF #48), Plaintiff similarly incorporates his arguments in opposition to the County's motion (ECF # 37). This memorandum will not repeat those arguments except incidentally, and will focus instead on the new or unique arguments presented by the City Defendants in support of their own motion.

### A. The City Defendants Are Not Entitled to Dismissal of Plaintiff's Federal Law Claims.

The City Defendants' attempts to dismiss Plaintiff's federal law claims fail to meet their burden of showing that Plaintiff could not recover a judgment against them even if all the allegations in the Complaint are true.

#### 1. Plaintiff Does Not Withdraw His Claims.

The City Defendants first argue that Plaintiff no longer intends to pursue his First, Second, and Seventh claims from the original Complaint. City Memo. at 4 (ECF #48). This is incorrect; Plaintiff's Proposed Amended Complaint seeks to eliminate the First Claim from the original Complaint, but preserves and renumbers the Second Claim and Seventh Claim. *See* ECF # 56-2 at 13, 17-18.

#### 2. The Complaint Alleges Constitutional Violations.

The City Defendants next argue Plaintiff failed to allege a constitutional violation. City Memo. at 5. The Complaint alleges violations of Plaintiff's constitutional Due Process rights and the requirements of *Brady v. Maryland*. Further, the Proposed

7

Amended Complaint alleges the County admitted it violated Plaintiff's constitutional rights, when the County admitted a "manifest injustice" had occurred, agreed to the release of Plaintiff from prison, moved for expungement of his record, and withdrew its charges against him. *See* ECF # 56-1 ¶¶ 30-33. Both the Complaint and the Proposed Amended Complaint allege the City participated in an intentional, longstanding wrongful pattern and practice of concealing the information concerning Beckman's misconduct. *Id*. ¶ 34. As more fully set forth in Plaintiff's memorandum in opposition to the County's motion to dismiss, ECF # 37, the Complaint and Proposed Amended Complaint allege constitutional violations by the Defendants.

### 3. The Complaint Alleges Material Suppression.

The City Defendants next argue that the suppressed information about Beckman's misconduct was not "material." City Memo. at 5 (ECF #48). The Complaint adequately plead a "material" *Brady* violation because it alleges that Plaintiff's conviction was overturned and he was released from prison as a result of the *Brady* violation becoming known. Compl. ¶ 16 (ECF #1), Proposed Am. Compl. ¶¶ 27, 30-33 (ECF # 56-1). The County even admitted materiality, since it filed a dismissal of its case against Plaintiff "for the following reasons: To correct a manifest injustice." Proposed Am. Compl. ¶ 31. Additionally, the Amended Complaint pleads that Plaintiff would never have been charged with a crime at all, if information about Beckman's misconduct had been disclosed. *Id*. ¶ 27.

8

Evidence is material with respect to *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012). Because Plaintiff pleaded that the result of the proceeding *was* changed as a result of the disclosure of the information about Beckman's misconduct – the conviction was withdrawn and expunged – and that Plaintiff would not have been convicted in the first place had the information been properly disclosed, Plaintiff has clearly pleaded that the information was "material."

The City Defendants argue at length against materiality, citing other fact-intensive cases. City Memo. 6-7. These cases miss the point. In *U.S. v. Flores-Mireles*, cited at City Memo. 6, the suppressed information simply was not helpful to the defendant. 112 F.3d 337, 340-41 (8th Cir. 1997) ("Because no evidence associated with the informant was favorable to the appellant, the *Brady* analysis simply does not apply . . . . this evidence was not favorable to the appellant. In fact, to the contrary, the tapes were highly incriminating . . . . The results were neither inculpatory nor exculpatory . . . . none of the allegedly withheld or delayed release of information was favorable to appellant . . .") The proposition that *Brady* is not violated by failure to disclose information *not* favorable to the accused is not relevant to this case, where the suppressed information was favorable to Plaintiff.

In the other cases cited by the City Defendants, courts were forced to predict what "would have" happened in the absence of the suppression of the *Brady* information. *U.S. v. Sumner*, 171 F.3d 636, 637 (8th Cir. 1999) ("would have been of little or no import");

9

*U.S. v. Chappell*, 990 F.3d 673, 678 (8th Cir. 2021) ("even if Chappell had blocked Ball's testimony, an acquittal seems unlikely"); *U.S. v. Dones-Vargas*, 936 F.3d 720, 723 (8th Cir. 2019) ("Nondisclosure . . . does not undermine confidence in the jury's verdict"); *U.S. v. Roberts*, 848 F.2d 906, 907-08 (8th Cir. 1988) ("no reasonable probability that the disclosure . . . would have affected the outcome"); *U.S. v. Castellano-Benitez*, 743 Fed. App'x 715, 718 (8th Cir. 2018) ("we can be sure the trial resulted 'in a verdict worthy of confidence'"). These cases are not germane here, because in this case, as pleaded in the Complaint, there is no need for prediction. We know that the outcome of the prosecution would have been different because the outcome of the prosecution changed as a direct result of the disclosure of the information about Beckman's misconduct. Prior to disclosure, Plaintiff was incarcerated, and after disclosure, Plaintiff was released and his conviction was withdrawn and expunged.

In view of the factual allegations pleaded in the Complaint, the Defendants cannot rely on a materiality argument to claim no constitutional violation occurred.

### 4. Plaintiff Alleges a Conscious Effort to Suppress.

The City Defendants argue that law enforcement officers face *Brady* liability "<u>only</u> where there are allegations and evidence that unbeknownst to the prosecutor, law enforcement 'engaged in a conscious effort to suppress exculpatory evidence.'" City Memo. at 7 (quoting *Helmig v. Fowler*, 828 F.3d 755, 762 (8th Cir. 2016)). What *Helmig* actually states, though, is "recovery of § 1983 damages from a law enforcement officer for a *Brady* violation requires the intentional or bad faith failure to disclose *Brady*

10

evidence to the prosecutor or the defense," 828 F.3d at 762, and § 1983 liability may exist for officers who participate in a conspiracy to deprive the defendant of constitutional rights, *id*. at 762-63. The Proposed Amended Complaint pleads exactly this: that the Defendants participated in a conspiracy to deny Plaintiff's constitutional rights, ¶¶ 20, 34-35, specifically that the City Defendants knew of the County's plan to suppress information about Beckman's misconduct and for months they "intentionally assisted" the County in "suppressing the information." Proposed Am. Compl. ¶¶ 16-17, 19-20 (ECF #56-1). Moreover, the City Defendants acknowledge that the Proposed Amended Complaint pleads this, and that these allegations meet the standard of *Helmig*. County Memo. at 7 ("While such allegations are being proposed in the amended complaint . . .") (ECF #48).

The City Defendants next suggest they met "any minimal *Brady* obligations they might have had," citing an attachment to their Answer to the Complaint, ECF #17-1, and *White v. Moulder*, 30 F.3d 80, 81-83 (8th Cir. 1994). City Memo. at 8. *White* held that law enforcement officers did not act improperly when they disclosed information learned *during a specific investigation* to the County Attorney, who then failed to disclose that information *in a prosecution brought directly as a result of that investigation*. *Id*. at 82. The Amended Complaint pleads far more egregious conduct – that the City Defendants knew the information about Beckman's misconduct for many months prior to the beginning of their investigation of Plaintiff and intentionally participated in a long-

running conspiracy with the County Attorney to suppress that information, which carried over into the prosecution of Plaintiff.

*White*, then, presents a quite different set of facts from the facts alleged in the Proposed Amended Complaint in this case.[4] The Proposed Amended Complaint pleads that the City Defendants engaged in a "conscious effort to suppress exculpatory evidence" (*see* City Memo. at 7) and it provides specific facts to support this allegation. The Proposed Amended Complaint further alleges that the County Attorney did not disclose the information about Beckman's misconduct to his assistant county prosecutors. ¶ 17 (ECF #56-1) Under these circumstances, the City Defendants had an obligation of their own to disclose the information to the assistant county prosecutors. The Proposed Amended Complaint alleges that the County discontinued its policy of suppressing the *Brady* information about Beckman as a result of one of the assistant county attorneys learning the information, and it discontinued the prosecution of nineteen pending criminal prosecutions at that time. *Id*. ¶ ¶ 25, 27. Accordingly, the Proposed Amended Complaint pleads that Plaintiff would not have been prosecuted if the City Defendants had disclosed the information about Beckman's misconduct which they conspired to suppress. *White* is not on point here.

---

[4] The initial Complaint alleges the City Defendants failed even to disclose information known about Beckman's misconduct to the prosecutor. Compl. ¶ 14 (ECF #1) Thus, if the Complaint is not amended, the City Defendants' argument for dismissal which depends upon their alleged disclosure to the prosecutor must be rejected.

### 5. No Qualified Immunity Applies to the City Defendants.

The City Defendants cursorily suggest that Defendant Ferrell is entitled to qualified immunity against Plaintiff's claims, on the basis that Plaintiff's constitutional right that was violated was purportedly not clearly established. City Memo. at 8 (ECF # 48). However, the obligation of police officers to disclose *Brady* information was recognized as well-established by multiple circuits in 2009. *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009). In fact, it was so well-established that the Sixth Circuit held that cities could be liable for failing to *train* their police officers regarding *Brady* obligations. *Id*. at 393. It cannot be seriously maintained that Defendants' *Brady* obligations were not clearly established by 2017 – particularly where Plaintiff's conviction was withdrawn and expunged immediately upon his discovery of the suppression of the information about Beckman's misconduct during his prosecution.

### B. The Complaint Pleads a *Monell* Claim.

The City Defendants also cursorily suggest the Complaint fails to plead a *Monell* claim. City Memo. at 8-9. (ECF #48)  The Proposed Amended Complaint, however, pleads that the City Defendants participated in a months-long policy, encompassing at least twenty-seven criminal prosecutions, of intentionally and wrongfully suppressing information about Beckman's misconduct, which led to the wrongful conviction of Plaintiff which was withdrawn and expunged upon discovery of the manifest injustice that had been committed. Proposed Am. Compl. ¶¶ 16-17, 19-20, 25, 28, 34 (ECF #56-1). These allegations plead an admitted, ongoing constitutional violation which harmed

13

Plaintiff; the City Defendant's intentional participation in the wrongful conduct and indifference to the wrong they were inflicting; and a longstanding history and pattern of violations. The Complaint pleads a *Monell* claim.

### C. The Complaint Pleads State Law Claims.

The state law tort claims against the City Defendants are well-pleaded and not subject to dismissal. These claims are based on the wrongful imprisonment of Plaintiff for nearly two years, which was terminated when the charges against him were withdrawn and the conviction expunged, as a result of the admitted "manifest injustice" inflicted upon him by the prosecution. The facts discussed above plead that Defendants intentionally participated in the wrongful prosecution and imprisonment of Plaintiff, thereby stating claims for wrongful imprisonment (Third Claim in Complaint, Second Claim in Proposed Amended Complaint), intentional infliction of emotional distress (Fifth Claim in Complaint, Third Claim in Proposed Amended Complaint), and aiding and abetting the County's torts committed against Plaintiff (Sixth Claim in Proposed Amended Complaint).

The City Defendants do not attempt to show that Plaintiff failed to plead the elements of these claims. Rather, the City Defendants argue these claims are "barred by common law official immunity and vicarious official immunity." City Memo. 10. Specifically, the City Defendants argue that "suppress[ing] exculpatory evidence" is "discretionary conduct protected by immunity." *Id*. This argument is doubly deficient. As the City Defendants acknowledge, official immunity protects (1) exercises of

14

"discretionary judgment" (2) unless the defendant committed a "willful or malicious wrong." The Complaint here alleges that neither of these elements are present.

<span style="text-decoration: underline">Ministerial Conduct</span>. The claims in the Complaint do not allege the City Defendants wrongfully exercised discretionary judgment, but that their wrongful conduct was part of their ministerial, not discretionary, duties. "The critical distinction to be made in an official immunity determination is whether the nature of the individual official's actions are discretionary or ministerial, because only discretionary decisions are immune from suit." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). *Wiederholt* held that official immunity did not protect an official's conduct which contravened obligations under a city ordinance, because the official had a ministerial obligation to carry out the responsibility imposed by the ordinance. *Id*. "[P]ublic officials clearly have a duty to adhere to ordinances and statutes."

Here, the City Defendants had obligations imposed by *Brady* which were ministerial, not discretionary – there were obligated to disclose the information about Beckman's misconduct. The Complaint alleges that rather than carrying out that ministerial obligation, they instead conspired to suppress the information. Accordingly, the Complaint pleads claims based on ministerial conduct, not discretionary, and official immunity is not available to the City Defendants.

<span style="text-decoration: underline">Willful and Malicious Conduct</span>. The Complaint alleges willful and malicious conduct by the City Defendants. "In the context of official immunity, willful and malicious are synonymous" and malice means "nothing more than the intentional doing

of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Carter v. Cole*, 526 N.W.2d 209, 214 (Minn. Ct. App.), *aff'd*, 539 N.W.2d 241 (Minn. 1995). "[I]ntentionally commit[ing] an act that he or she then has reason to believe is prohibited" constitutes a willful or malicious wrong by an official. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 663 (Minn. 2004). Further, "Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury." *Johnson v. Morris*, 453 N.W.2d 31, 42 (Minn. 1990).

Plaintiff's Complaint alleges the City Defendants intentionally suppressed *Brady* information. As law enforcement officers they knew (or were required to know[5]) their obligations under *Brady*, so conspiring to suppress that information constituted intentional commission of prohibited acts without legal justification. Suppression of the information also violated Minn. R. Crim. P. 9.03 subd. 2(a), which requires disclosure of exculpatory information to a defendant "in time to afford counsel the opportunity to make beneficial use of it." Plaintiff was entitled under Rule 9.03 to receive the information about Beckman's misconduct prior to the prosecution's offer of a guilty plea, so that his counsel could make beneficial use of it when evaluating the offer. Accordingly, the Complaint pleads malicious and willful wrongful conduct by the City Defendants. If the

---

[5] As noted above, in *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009), the court held that a city could be liable for failing to train law enforcement officers regarding *Brady* obligations.

City Defendants claim otherwise, Plaintiff is entitled to a jury's determination on that issue.

<u>Vicarious Immunity</u>. The City seeks to shelter behind vicarious official immunity purportedly derived from immunity of its employees. City Memo. 11. Vicarious immunity does not exist where the individual officials lack immunity, *Raymond for Kelley v. Pine Cty. Sheriff's Off.*, 915 N.W.2d 518, 527 (Minn. Ct. App. 2018), so (for the reasons discussed above) vicarious immunity does not apply here. Moreover, even if an individual official had immunity here, vicarious immunity for the City would not apply. Vicarious immunity is not an "automatic grant," *Sletten v. Ramsey Cty.*, 675 N.W.2d 291, 300 (Minn. 2004), but rather is a "policy question for the court," *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 508 (Minn. 2006), to be granted "when failure to grant it would focus 'stifling attention' on an official's performance 'to the serious detriment of that performance.'" *Id*. The policy is intended to prevent "officials second-guessing themselves when making decisions." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 664 (Minn. 2004).

Vicarious immunity is not appropriate in this case, for the policy considerations here all point the other direction. Holding the City liable for its law enforcement personnel participating in a longstanding conspiracy to suppress *Brady* information that affected at least twenty-seven criminal defendants, as the Complaint alleges, would not result in harmful second-guessing or "stifling attention," but it might prompt the City to develop plainly necessary safeguards to prevent future reoccurrence of such blatant

17

violations. The City should not benefit from vicarious official immunity to protect its disregard for basic civil rights.

### D. The Proposed Amended Complaint Pleads Aiding and Abetting.

The City Defendants imply that Plaintiff's proposed aiding and abetting claim against them is somehow improper. City Memo. 10 n.4.  The aiding and abetting claim seeks to hold the City Defendants liable for their intentional participation in, and assistance of, the torts inflicted upon Plaintiff by the County. The City Defendants offer no argument to show this claim is subject to dismissal, and therefore it should not be dismissed.

### CONCLUSION

Defendants City of Cloquet and Carey Ferrell offer no argument that would permit dismissal of Plaintiff's Complaint or Proposed Amended Complaint on a Rule 12(b)(6) motion. Rather, they offer factual assertions in reliance on sources outside the Complaint and they disregard Plaintiff's actual claims and theories pleaded in the Complaint. Their Motion to Dismiss should be denied.

|  |  |
|---|---|
|  | PARKER DANIELS KIBORT LLC |
| Dated:  September 24, 2021 | *s/ Andrew D. Parker* |
|  | Andrew D. Parker, MN #195042 |
|  | Joseph A. Pull, MN #0386968 |
|  | 888 Colwell Building |
|  | 123 North 3rd Street |
|  | Minneapolis, MN 55401 |
|  | Telephone:  612-355-4100 |
|  | Facsimile:  612-355-4101 |
|  | parker@parkerdk.com |
|  | pull@parkerdk.com |

GEONETTA & FRUCHT, LLP

*s/ Kenneth N. Frucht*
Kenneth N. Frucht, Cal. Bar #178881
825 Washington Street, #220
Oakland, CA 94607
T: (510) 250-2743
*Admitted pro hac vice*

**Attorneys for Plaintiff Clarence Lozoya**