UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Clarence Lozoya,

      Plaintiff,

v.

City of Cloquet;
County of Carlton;
Scott Beckman, *an individual*;
Carey Ferrell, *an individual*; and
Does 1–25,

      Defendants.

File No. 21-cv-0990 (ECT/LIB)

**OPINION AND ORDER**

---

Joseph Alan Pull and Andrew D. Parker, Parker Daniels Kibort LLC, Minneapolis, MN; and Kenneth Frucht, Geonetta & Frucht LLP, Oakland, CA, attorneys for Plaintiff Clarence Lozoya.

Jessica E. Schwie, Kennedy & Graven, Chartered, Minneapolis, MN, attorney for Defendants City of Cloquet and Carey Ferrell.

Vicki A. Hruby and Joseph E. Flynn, Jardine Logan & O'Brien PLLP, Lake Elmo, MN, attorneys for County of Carlton.

---

After pleading guilty to felony second degree assault in Minnesota state district court and spending two years in prison for that offense, Plaintiff Clarence Lozoya learned that the office of Carlton County Attorney Thomas H. Pertler did not—prior to his guilty plea—disclose evidence that might have impeached his arresting officer, Scott Beckman, had the case gone to trial.[1]  In this case brought under 42 U.S.C. § 1983 and Minnesota tort

---

[1]     Lozoya's claims against Officer Beckman were dismissed without prejudice pursuant to stipulation.  ECF Nos. 34, 36.

law, Lozoya seeks damages he alleges resulted from Defendants' actions relating to the

non-disclosure of this impeachment evidence.   At the heart of Lozoya's Amended

Complaint[2] is his allegation that the failure to provide this impeachment evidence to

Lozoya and his attorneys violated the due process principles articulated in *Brady v.*

*Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  *See*

*generally* Am. Compl. [ECF No. 56-1].

Defendants Carlton County, the City of Cloquet, and Carey Farrell have moved to

dismiss Lozoya's Amended Complaint—Carlton County under Federal Rule of Civil

Procedure 12(b)(6), and the City of Cloquet and Carey Ferrell under Rules 12(b)(6) and

12(c).  ECF Nos. 18, 46.  The motions will be granted.  Contrary to Lozoya's theory, "the

Constitution does not require the Government to disclose material impeachment evidence

prior to entering a plea agreement with a criminal defendant."  *United States v. Ruiz*, 536

U.S. 622, 633 (2002).  This rule is fatal to the theory underlying Lozoya's § 1983 claims.

Lozoya's fallback argument that Defendants are bound by the Carlton County Attorney's

alleged previous admission of a *Brady* violation is not persuasive.  Adhering to Eighth

---

[2]    After Defendants filed their motions, Lozoya filed a motion seeking leave to amend
his complaint pursuant to Fed. R. Civ. P. 15(a)(2).  *See* ECF Nos. 52, 56-2.  Over
Defendants' opposition, *see* ECF Nos. 58, 61, the motion will be granted.  This is one of
those cases where the proposed amendments are minor and don't add anything that
Defendants haven't already addressed in their moving papers or at oral argument.  *See*
*Manos v. Fed. Bureau of Prisons*, No. 18-cv-427 (PJS/HB), 2019 WL 1494604, at *2 (D.
Minn. Mar. 11, 2019), *report and recommendation adopted*, 2019 WL 1491789 (D. Minn.
Apr. 4, 2019).  For that very practical reason, Lozoya's proposed Amended Complaint will
be treated as his operative pleading.

Circuit guidance, Lozoya's state-law claims will be dismissed without prejudice to be adjudicated in Minnesota state court.

I[3]

*Lozoya is arrested, pleads guilty, and is sentenced to prison.*  On December 5, 2016, Lozoya was arrested by City of Cloquet Police Officer Scott Beckman and charged with felony second-degree assault with a firearm and felony fifth-degree assault by Carlton County.  Am. Compl. ¶ 10.  On January 4, 2017, Lozoya pleaded guilty to felony second-degree assault.  *Id.* ¶ 21; *see* ECF Nos. 22-1, 22-4.  At the plea hearing, Lozoya testified under oath that he was pleading guilty "voluntarily" [ECF No. 22, Ex. E at 6, 7] and agreed that he had "assault[ed] an individual" on December 5, 2016, in Cloquet, Minnesota [*id*. at 8–9].  Lozoya stated: "I confronted him, you know.  He was—he's really young to be with my sister and to take care of my two nephews, and I guess a confrontation happened and I ended up in [jail]."  *Id*. at 9.  Lozoya also testified, "I hit him with a gun," and admitted that it was a "real gun."  *Id*.  On March 27, 2017, Lozoya was sentenced to four years in

---

3       In describing the relevant facts and resolving this motion under Rules 12(b)(6) and 12(c), all factual allegations in Lozoya's Amended Complaint are accepted as true, and all reasonable inferences are drawn in his favor.  *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014); *Ashley Cnty. V. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition to the Amended Complaint, some facts are taken from *In Re Petition for Disciplinary Action against Thomas H. Pertler*.  *See* 948 N.W.2d 146 (Minn. 2020); *see also* ECF Nos. 40-1, 40-2.  In a joint Stipulation for Discipline filed on July 29, 2020, Pertler "unconditionally admit[ted] the allegations of the petition."  ECF No. 40-2 ¶ 4.  The Petition, Stipulation for Discipline, and Minnesota Supreme Court order disbarring Pertler are public court records of which the Court may take judicial notice and properly consider in the context of Defendants' motions.  *See, e.g.*, *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (citing *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005)).

prison for this offense.  Am. Compl. ¶ 21.  Lozoya does not allege that he was innocent of the charge to which he pleaded guilty.

*Prior to Lozoya's arrest, the Carlton County Attorney had learned of Officer Beckman's misconduct in cases other than Lozoya's.*  On May 2, 2016, Carlton County Attorney Thomas Pertler received information from the City of Cloquet's Police Chief regarding an ongoing investigation into possible misconduct by Officer Beckman "relating to a February 2016 suspicious activity report and subsequent search warrant application." ECF No. 40-1 ¶ 6; *see* Am. Compl. ¶ 15.  On June 6, 2016, Pertler received the final investigative report, substantiating Beckman's misconduct.  *See* Am. Compl. ¶ 15; ECF No. 40-1 ¶ 7.

*County Attorney Pertler had previously acknowledged the constitutional disclosure obligations attending this information but did not disclose the information or any part of it to Lozoya (or anyone else).*  On June 28, 2016, Pertler sent a letter to the Cloquet Police Chief acknowledging receipt of the final report concerning Beckman's misconduct.  *See* Am. Compl. ¶ 16; ECF No. 40-1 ¶ 8.  In his letter, Pertler acknowledged the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), and that failure to comply intentionally or unintentionally with those requirements could lead to dismissal of a criminal case.  *See* Am. Compl. ¶ 16; ECF No. 40-1 ¶¶ 8, 14.  Suggesting he believed that disclosure of the information would spread quickly through the local criminal defense bar, Pertler wrote, "I have no reason to believe that once one defense attorney was privy to the knowledge that all of them would know shortly thereafter."  ECF No. 40-1 ¶ 8; *see* Am. Compl. ¶ 16. Pertler also wrote that he would try to resolve pending cases with a plea agreement, but

4

"potential problems would most likely arise" if matters were set for trial. ECF No. 40-1

¶ 8. Further, Pertler wrote:

> With respect to the future prosecutions we certainly would attempt to do the best of our ability but in the event that one or more of the matters got set for trial and disclosure was necessary, as you believe the case to be, that could potentially open my office up to scrutiny from the bench and defense bar with allegations that we were aware of the issue presented but continued to attempt to force through cases anyway. The one thing I certainly would not do, and would hope no one would ever ask me to do, would be to conduct business in a manner that could lend itself to the appearance of impropriety. I must consider our ethical obligations and duties and do not want to be accused of practicing law in a matter that could be perceived as trying to run something through the system knowing that there is potentially exculpatory information to the defendant that is constitutionally required of me to be disclosed.

*Id.* ¶ 9; *see* Am. Compl. ¶ 16. The information regarding Beckman's misconduct was not

provided to Lozoya prior to his January 4, 2017 guilty plea, though Lozoya's attorney

demanded on December 8, 2016, that the County disclose *Brady* material. *See* Am. Compl.

¶¶ 12–13; ECF No. 39-1.

*Pertler is informed of the conclusion and outcome of the investigation concerning*

*Officer Beckman but persists in not disclosing this information.* In a letter dated March 2,

2017, the Cloquet Police Chief advised Pertler that Officer Beckman's disciplinary inquiry

was complete, and that the allegations of misconduct had been sustained. ECF No. 40-1

¶¶ 11. Pertler nonetheless persisted in not disclosing Officer Beckman's misconduct to

Assistant Carlton County Attorneys responsible for prosecuting criminal matters. *See* Am.

Compl. ¶ 17; ECF No. 40-1 ¶ 13.

*An Assistant Carlton County Attorney independently learns of the information concerning Officer Beckman.*  In May 2018, Assistant Carlton County Attorney Michael Boese learned of Beckman's past misconduct (and that it had been shared previously with Pertler) during the course of an unrelated felony case that Boese was prosecuting involving Beckman.  *See* Am. Compl. ¶ 25; ECF No. 40-1 ¶¶ 16–17.  Boese shared his findings with other Assistant Carlton County Attorneys, ultimately resulting in the dismissal of nineteen pending criminal prosecutions, all unrelated to Lozoya's case.  *See* Am. Compl. ¶ 25; ECF No. 40-1 ¶¶ 18–20.  These cases were not re-charged.  ECF No. 40-1 ¶ 28.

*Pertler loses his bid for reelection, and the Acting County Attorney adopts a policy regarding the disclosure of Officer Beckman's misconduct.*  In November 2018, Pertler lost the Carlton County Attorney election to Lauri Ketola.  ECF No. 40-1 ¶ 27.  Pertler designated Assistant County Attorney Jeffrey Boucher as Acting Carlton County Attorney for the remainder of (what would have been) Pertler's term.  *See* Am. Compl. ¶ 26; ECF No. 40-1 ¶ 23.  In December 2018, Boucher implemented a Brady Disclosure Policy and advised the Cloquet City Administrator of cases that had been dismissed based on Beckman's misconduct.  *See* Am. Compl. ¶ 27; ECF No. 40-1 ¶¶ 24–26.  In a letter to the city, Boucher wrote, "Pursuant to our obligations under *Brady v. Maryland* [] and related case law, the findings in question must be disclosed in every case in which Officer Scott Beckman is involved," and "[F]indings of misconduct such as those involving [] Beckman are of a type where the misconduct should be taken into account at the time of charging." ECF No. 40-1 ¶ 26; *see* Am. Compl. ¶ 27.  Ketola took office in January 2019 and directed a review of the cases involving Beckman.  ECF No. 40-1 ¶¶ 27–28.  As a result, the County

retroactively dismissed eight convictions, with the records sealed and expunged.  *See* Am. Compl. ¶ 28; ECF No. 40-1 ¶¶ 27–29.  It is not clear whether Lozoya's case was included among these eight dismissed convictions, though as described in the next paragraph, his case would be dismissed.

*Lozoya's case is dismissed.*   In February 2019, Lozoya's attorney learned of Beckman's misconduct and filed a motion seeking to withdraw Lozoya's guilty plea, asserting that "Defendant's counsel became aware the State intended to dismissed [sic] charges after discovery of a due process violation in the form of failing to provide notice of Brady/Giglio material to Defendant."  ECF No. 39-2; *see* Am. Compl. ¶ 30.  Two days later, Ketola moved to dismiss Lozoya's case with prejudice "under Minnesota Rule of Criminal Procedure 30.01," identifying only the following reason: "To correct a manifest injustice."  ECF No. 22-2; *see* Am. Compl. ¶ 31.  Lozoya was released from prison, and his record was expunged.  Am. Compl. ¶ 32.

*Lozoya files this case.*  Lozoya alleges several claims in his Amended Complaint: (1) against Carlton County for deprivation of liberty and false imprisonment without due process in violation of 42 U.S.C. § 1983, *id.* ¶¶ 36–42; (2) against all Defendants for false imprisonment, *id.* ¶¶ 43–47; (3) against all Defendants for intentional infliction of emotional distress, *id.* ¶¶ 48–51; (4) against Carlton County and the City of Cloquet under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), *id.* ¶¶ 52–55; (5) against Carlton County for negligent supervision, *id.* ¶¶ 56–62; (6) against the City of Cloquet and Ferrell for aiding and abetting Carlton County's torts, *id.* ¶¶ 63–

68; and (7) against Carlton County and the City of Cloquet for injunctive relief, *id.* ¶¶ 69–75.

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

## A

One predicate federal violation supports Lozoya's § 1983 claims: the failure to provide Lozoya with impeachment information regarding Officer Beckman's misconduct before Lozoya pleaded guilty. This is clear from Lozoya's Amended Complaint. Lozoya alleges, for example, that:

> Defendant Carlton [County] offered Plaintiff a plea to settle the criminal charges against him knowing it had *Brady/Giglio*

8

> evidence in its possession, which it had long suppressed, and the existence of which Plaintiff had no knowledge. Lacking the critical exculpatory evidence impeaching Beckman's credibility that Defendants had in their possession but suppressed and facing the risk of a longer sentence if convicted at trial, on January 4, 2017, Plaintiff pleaded guilty to one of the felony counts and on March 27, 2017, was sentenced to four years in prison.

Am. Compl. ¶ 21. In other words, Lozoya alleges the existence of a federal constitutional duty to provide him with impeachment information—that is, evidence tending to undermine Officer Beckman's credibility—before he pleaded guilty. Different versions of the same allegation appear in several other of the Amended Complaint's paragraphs. *E.g.*, *id.* ¶ 9 ("Plaintiff's injuries and damages occurred as a result of civil rights violations by Defendants . . . wrongfully failing to provide exculpatory evidence to Plaintiff and his attorneys, in violation of Plaintiff's constitutional rights."); *id.* ¶ 12 ("The information concerning Beckman's history of misconduct was not provided to any criminal defendants arrested by Beckman, including Plaintiff, but instead was suppressed."); *id.* ¶ 14 ("Defendants failed to provide any information about Beckman's misconduct until Plaintiff had been incarcerated for approximately two years, and instead suppressed all of it in violation of *Brady v. Maryland*, 373 US [sic] 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)."); *id.* ¶ 18 ("Ethical, legal, and constitutional obligations required Pertler to disclose the information about Officer Beckman's misconduct promptly to any criminal defendant whose case involved Beckman in any way."). The Amended Complaint hints at no other federal violation.

The law is clear, however, that Defendants had no federal obligation to disclose the information concerning Officer Beckman to Lozoya before he pleaded guilty: "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). In *Ruiz*, the defendant (Ruiz) was found with "30 kilograms of marijuana in [her] luggage." *Id.* at 625. Federal prosecutors offered Ruiz a plea bargain that, among other terms, required her to "waive the right to receive impeaching information relating to any informants or other witnesses as well as the right to receive information supporting any affirmative defense the defendant raises if the case goes to trial." *Id.* (cleaned up). Ruiz rejected the offered plea bargain, eventually pleaded guilty without an agreement, and appealed her sentence. *Id.* at 625–26. On appeal, the Ninth Circuit held essentially that Ruiz's plea was not voluntary "unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted on a trial." *Id.* at 629. The Supreme Court disagreed (unanimously), holding that the Constitution does not require the "preguilty plea disclosure of impeachment information." *Id.* The Court identified three basic reasons for its holding. "First, impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id.* Second, the Court explained that it had "found no legal authority embodied either in this Court's past cases or in cases from other circuits" that might support finding the existence of a right to pre-plea disclosure of impeachment information. *Id.* at 630. Third, the Court explained that "due process considerations" argued against finding such a right

because the "Government's interest securing those guilty pleas that are factually justified" outweighed the "often limited" value such disclosure might offer a defendant. *Id.* at 631–32. The bottom line, then, is that Lozoya's § 1983 claims are grounded on the alleged violation of a federal right that doesn't exist.

Lozoya cites no case accepting his pre-plea *Brady/Giglio* theory, and several cases in addition to *Ruiz* support rejecting the theory. For example, the Ninth Circuit has rejected a § 1983 claim premised on the alleged pre-plea failure to disclose impeachment evidence. *Beveridge v. City of Spokane*, No. 20-35848, 2021 WL 3082003, at \*2 (9th Cir. July 21, 2021) (affirming dismissal of § 1983 claims because "the United States Constitution does not require disclosure of impeachment evidence prior to entry of guilty pleas"). A case from this District recognizes that *Ruiz* would bar a habeas petition based on the government's alleged failure to disclose impeachment evidence prior to a guilty plea. *Shepersky v. Wengler*, 09-cv-2049 (PJS/SRN), 2010 WL 6367122, at \*3 n.3 (D. Minn. Sept. 10, 2010), report and recommendation adopted, 2011 WL 1189099, at \*2 (D. Minn. Mar. 28, 2011). And Circuit Courts of Appeals have applied *Ruiz* in finding that a failure to disclose *Brady* evidence prior to a guilty plea does not result in a *Brady* violation. *See U.S. v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010); *Friedman v. Rehal*, 618 F.3d 142, 153–54 (2d Cir. 2010); *U.S. v. Moussaoui*, 591 F.3d 263, 285–86 (4th Cir. 2010); *U.S. v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009); *Robertson v. Lucas*, 753 F.3d 606, 619–22 (6th Cir. 2014).[4]

---

[4]    There is a Circuit split regarding "whether *Ruiz* applies to **exculpatory** *Brady* material" as distinct from **impeachment** *Brady* material. *Robertson*, 753 F.3d at 621

B

Lozoya has a fallback: he says that the absence of a constitutional right to the pre-plea disclosure of impeachment evidence is no problem because "the County admitted the wrong it inflicted upon Lozoya was a due process violation."  Pl.'s Mem. in Opp'n to Carlton Cnty.'s Mot. at 9 [ECF No. 37]; Am. Compl. ¶ 33 (alleging "the County admitted it violated Plaintiff's constitutional rights" and "is estopped from denying that violation").[5] In other words, Lozoya argues that the predicate to his § 1983 claim doesn't need to be an actual violation of an established federal right: the Carlton County Attorney's (alleged) admission of a constitutional violation as part of the dismissal of his criminal case is enough regardless of whether such a violation actually occurred.  Lozoya argues that the Carlton County Attorney's "admission" is binding here under the Minnesota common law doctrines of collateral estoppel and res judicata, and under Minnesota and federal rules regarding waiver.  *Id.* at 10–17.  These arguments are not persuasive.

Start with collateral estoppel.  "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was

---

(emphasis added).  The Eighth Circuit has not weighed in on the issue.  Whatever its status, this split is immaterial here.  Though Lozoya refers to the evidence concerning the Officer Beckman investigation as both "exculpatory" and "impeaching," *e.g.*, Am. Compl. ¶ 21, he alleges no facts in his Amended Complaint hinting that he was innocent or that the Beckman-investigation evidence had any value beyond its use to impeach Officer Beckman.  In other words, Lozoya nowhere alleges facts plausibly showing that this evidence was "exculpatory."

[5]     Lozoya implies that the County's admission binds the other Defendants.  *See* Pl.'s Mem. in Opp'n to City of Cloquet's Mot. at 8 [ECF No. 65].  He does not explain how.

rendered.'"   *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1013 (8th Cir.

2016) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

"Under Minnesota law, collateral estoppel is appropriate when the following four elements

are met: (1) the issue [is] identical to one in a prior adjudication; (2) there was a final

judgment on the merits; (3) the estopped party was a party or in privity with a party to the

prior adjudication; and (4) the estopped party was given a full and fair opportunity to be

heard on the adjudicated issue." *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531–32

(Minn. 2003) (quotation omitted).   Regarding the first element, "[t]he issue on which

collateral estoppel is to be applied must be the same as that adjudicated in the prior action

and it must have been necessary and essential to the resulting judgment in that action."

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. Ct. App. 2004) (citing *Ellis v.*

*Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982), and *Hauser v.*

*Mealey*, 263 N.W.2d 803, 808 (Minn. 1978)).   "The issue must have been distinctly

contested and directly determined in the earlier adjudication for collateral estoppel to

apply." *Hauschildt*, 686 N.W.2d at 837–38.  Issue preclusion in Minnesota is not "rigidly

applied," rather, "the focus is on whether its application would work an injustice on the

party against whom estoppel is urged." *Falgren v. Bd. of Teaching*, 545 N.W.2d 901, 905

(Minn. 1996) (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14

(Minn. 1988)).   "The party asserting collateral estoppel has the burden to establish that 'the

issue was actually presented and necessarily determined in the earlier action.'"   *Mach v.*

*Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (quoting *Lange v. City of*

*Byron*, 255 N.W.2d 226, 228 (Minn. 1977)).

The first collateral-estoppel element is not met here because we don't know what issue or issues were adjudicated in the dismissal of Lozoya's state criminal case. Lozoya does not allege the content of or rationale underlying the Carlton County District Court's order for judgment in his Amended Complaint, and the record here includes no written order explaining the Carlton County District Court's reasoning. There is only a copy of that court's docket indicating that the orders permitting Lozoya to withdraw his plea and dismissing the case on the County Attorney's motion were made "on the record." ECF No. 44 at 4. But there is no transcript of those proceedings in this record.

Lozoya seems to argue that it nonetheless would be appropriate to infer that the Carlton County District Court dismissed his state criminal case because it found a *Brady* violation based on the content of his motion to withdraw his guilty plea [*see* ECF No. 39-2] and the County Attorney's notice and motion for dismissal [*see* ECF No. 22-2], but that inference seems inappropriate. Leaving aside that courts can, and often do, decide issues for reasons that differ from parties' arguments, the two motions in the state court case do not clearly align and are not sufficiently particular to justify inferring that the Carlton County District Court dismissed Lozoya's case because it determined there was a *Brady* violation. It is true that Lozoya's motion to withdraw his plea referenced a "fail[ure] to provide notice of Brady/Giglio material" [ECF No. 39-2 at 2], but the County Attorney's dismissal motion did not reference *Brady*, *Giglio*, a right to the disclosure of impeachment evidence, due process, or any other particular issue [*see* ECF No. 22-2]. The County Attorney's motion provided one ground: "To correct a manifest injustice." *Id.* Assuming the Carlton County District Court accepted it, the County Attorney's "manifest injustice"

14

explanation could mean many things. *See, e.g.*, *State v. Fugalli*, --- N.W.2d ---, 2021 WL

5621342, at *2 (Minn. Dec. 1, 2021) (applying "manifest injustice" standard to determine

accuracy of guilty plea); *State v. Pakhnyuk*, 926 N.W.2d 914, 928 (Minn. 2019) (Gildea,

Chief J., concurring) (discussing "manifest injustice" in a sufficiency-of-the-evidence

challenge); *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (applying "manifest

injustice" under law-of-the-case doctrine); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S.

100, 101 (2009) (recognizing "manifest justice" as a ground for a writ of mandamus). The

term remains quite broad even if one assumes both that the County Attorney intended it

here to share the meaning Minnesota law assigns to it in the context of a motion to withdraw

a guilty plea and the Carlton County District Court shared that understanding. As the

Minnesota Court of Appeals recently explained:

> To prevail on a post-conviction motion to withdraw a guilty
> plea, a petitioner must establish that withdrawal is necessary to
> "correct a manifest injustice." Minn. R. Crim. P. 15.05, subd.
> 1. "A manifest injustice exists if a guilty plea is not valid."
> *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be
> constitutionally valid, "a guilty plea must be accurate,
> voluntary, and intelligent." *Taylor v. State*, 887 N.W.2d 821,
> 823 (Minn. 2016). A guilty plea is intelligent if the defendant,
> at the time he entered the plea, "understood the charges against
> him, the rights he waived, and the consequences of the plea."
> *Dikken v. State*, 896 N.W.2d 873, 877 (Minn. 2017) (quotation
> omitted). Similarly, a guilty plea is voluntary if it is not "based
> on any improper pressures or inducements." *Id.* at 876–77.

*Smith v. State*, No. A21-0071, 2021 WL 4517208, at *2 (Minn. Ct. App. Oct. 4, 2021). In

other words, a guilty plea may be manifestly unjust and invalid for innumerable reasons

having nothing to do with a constitutional failure to disclose impeachment evidence. Even

if one assumes (as Lozoya does) that the County Attorney's dismissal was prompted by

Pertler's non-disclosure of evidence regarding Officer Beckman, that doesn't mean the County Attorney confessed (and the Carlton County District Court found) a constitutional violation. Litigants often dismiss claims for reasons unconnected to the merits. One could hypothesize several motivations underlying the County Attorney's dismissal: the avoidance of further publicity surrounding Officer Beckman and Pertler's handling of the issue; resource allocation; non-specific considerations of fairness; the fact that Lozoya had served the majority of his sentence. The bottom line is that the record here gives no sufficient basis to conclude that the Carlton County Attorney confessed a *Brady* violation or, more to the point, that the Carlton County District Court directly determined a *Brady* violation that was necessary and essential to that court's judgment dismissing the State's case against Lozoya.[6]

These facts distinguish this case from cases Lozoya cites to support his collateral estoppel argument. In *Jones v. Cannizzaro*, the government was barred from relitigating in a § 1983 action whether it withheld *Brady* material after the Louisiana Circuit Court of appeals vacated Jones' conviction specifically for *Brady* violations involving material evidence. No. CV 18-503, 2019 WL 2289470, at *1–3 (E.D. La. May 28, 2019). In *Kluppelberg v. Burge*, the court applied collateral estoppel to preclude the City of Chicago from re-litigating its *Monell* liability because, the court determined, a prior jury verdict

---

[6]     Lozoya has not requested, and it would be inappropriate to permit, discovery beyond the written record before the Carlton County District Court and its recorded reasoning to ascertain what issues that court decided. *See State v. Robinson*, 114 N.W.2d 737, 741 (1962) (quoting *Fayerweather v. Ritch*, 195 U.S. 276, 306 (1904)); *Larson v. Minn. Chamber Bus. Servs., Inc. Emp. Welfare Plan*, 114 F. Supp. 2d 867, 870–71 (D. Minn. 2000).

necessarily implied a determination that the City had a policy or practice of withholding

exculpatory and impeachment evidence.  276 F. Supp. 3d 773, 775 (N.D. Ill. 2017).  And

in *Wilson v. City of Philadelphia*, the court applied collateral estoppel to bar re-litigation

of a *Batson* claim, where the issue was already litigated and decided specifically in a prior

state-court hearing.  No. 14-05396, 2016 WL 1399264, at *1 (E.D. Pa. Apr. 8, 2016).  In

each of these cases, the plaintiffs showed that the relevant issue had been adjudicated in a

prior proceeding.  Lozoya has not done that here.

Turning to res judicata, under Minnesota law, "[r]es judicata applies where the

earlier litigation (1) 'involved the same set of factual circumstances,' (2) involved the same

parties, (3) reached a final judgment on the merits, and (4) the party against whom res

judicata is to be applied 'had a full and fair opportunity to litigate the matter.'"  *Danielson*

*v. Koronis Parts, Inc.*, No. A20-0975, 2021 WL 1343695, at *3 (Minn. Ct. App. Apr. 12,

2021) (quoting *Rucker v. Schmidt*, 794 N.W.2d 114, 117 (Minn. 2011)).  It is difficult to

distinguish Lozoya's res judicata argument from his collateral estoppel argument.  His

argument seems to be that the constitutional violation he alleges here mirrors his defense

in his state criminal case, and that the Carlton County District Court's judgment decided

that issue once and for all in his favor.  *See* Pl.'s Mem. in Opp'n to Carlton Cnty.'s Mot. at

15–16.  There are reasons to be skeptical of Lozoya's res judicata argument.  Though it

may be appropriate in some cases, the "use of offensive res judicata is rare," *Presidential*

*Bank, FSB v. 1733 27th St. SE LLC*, 318 F. Supp. 3d 61, 71 n.2 (D.D.C. 2018), and Lozoya

cites no case from Minnesota or any other jurisdiction applying res judicata under like

circumstances.  Regardless, as discussed above, the record does not support Lozoya's

17

argument that the Carlton County District Court entered judgment of dismissal based on the *Brady* issue's merits one way or the other.

Next, under Minnesota law, waiver "is the intentional relinquishment of a known right." *White v. City of Elk River*, 840 N.W.2d 43, 51 (Minn. 2013). The Eighth Circuit applies a similar rule. *United States v. Demilia*, 771 F.3d 1051, 1055 (8th Cir. 2014) ("Under our waiver jurisprudence, a right—such as the right to have recourse to a legal rule or argument—is waived when it is intentionally relinquished or abandoned." (quotation marks and citation omitted)). Lozoya cites no case finding waiver on facts that are anything close to those presented here. Regardless, Lozoya's waiver argument depends on determining that the "manifest injustice" statement made in support of the County Attorney's notice and motion to dismiss intentionally relinquished once and for all the County's right to argue that the failure to disclose the Beckman-impeachment evidence to Lozoya before he pleaded guilty wasn't a constitutional violation. The County Attorney's notice and motion is not sufficiently specific to justify that conclusion.

*

To summarize, the one predicate federal violation supporting Lozoya's § 1983 claims is Defendants' alleged failure to provide Lozoya with impeachment information before he pleaded guilty. But "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Ruiz*, 536 U.S. at 633. Lozoya therefore cannot rely on this theory to plead plausible § 1983 claims (including *Monell* claims). Finally, Lozoya has not carried his burden, either through pleading or the submission of evidence, to show that the Carlton

County Attorney's conduct in the state criminal case bars Defendants from challenging Lozoya's constitutional theory in this case.

The Eighth Circuit has regularly observed that, "when a district court has dismissed every federal claim, . . . judicial economy, convenience, fairness, and comity will usually point toward declining to exercise jurisdiction over the remaining state-law claims." *McManemy v. Tierney*, 970 F.3d 1034, 1041 (8th Cir. 2020) (internal quotation marks and citation omitted); *see* 28 U.S.C. § 1367; *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016); *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008). Lozoya's remaining state-law claims will therefore be dismissed without prejudice to his right to re-file them in state court.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**

      1.     Plaintiff's Motion for Leave to Amend the Complaint [ECF No. 52] is **GRANTED**; and

      2.     Defendants' Motions to Dismiss [ECF Nos. 18, 46] are **GRANTED**, as follows:

            a.     Plaintiff's § 1983 claims (Claims 1, 4, and 7[7]) are dismissed with prejudice.

---

[7]     Count 7, for "Injunctive Relief," is not a standalone claim. To the extent that it derives from Lozoya's § 1983 Claims, Count 7 is dismissed with prejudice.

b.     Plaintiff's state law claims (Claims 2, 3, 5, and 6) are dismissed

without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 4, 2022                    s/ Eric C. Tostrud
_____
                                            Eric C. Tostrud
                                            United States District Court